IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA BORJA-VALDES, LILLIE ELLISON, AND MERCEDES HERNANDEZ-MONROY,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | No. 3:14-cv-04168-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** |

Ana Borja-Valdes, Lillie Ellison, and Mercedes Hernandez-Monroy sued the City and County of San Francisco ("CCSF") for race and national origin discrimination in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and the California Fair Employment and Housing Act ("FEHA"). Their Third Amended Complaint ("TAC") (dkt. 42) attempts to address deficiencies from their Second Amended Complaint ("SAC") (dkt. 28) that the Court identified in its Order Granting Motion to Dismiss with Leave to Amend ("Order") (dkt. 40). The TAC claims are largely identical to the SAC claims, alleging disparate impact and disparate treatment surrounding the Plaintiffs' termination and lack of promotion from their roles as CCSF employees. CCSF moves to dismiss the TAC with respect to Plaintiffs Ellison and Hernandez-Monroy[1] on the basis that they once again fail to state a claim on which relief can be granted under Federal Rule of Civil Procedure

---

[1] CCSF does not move to dismiss Plaintiff Ana Borja-Valdes's claims.

("FRCP") 12(b)(6). Plaintiffs have had three opportunities to amend their complaint and the most recent iteration fails to establish viable legal claims. The Court therefore GRANTS the Motion to Dismiss the TAC WITH PREJUDICE.

## I.  BACKGROUND

### A.  Plaintiff Lillie Ellison

In October 2007, Ellison was appointed as a permanent civil service employee with CCSF. TAC ¶ 72. Her position, titled Principal Personnel Analyst/Recruitment Manager, was under the 1246 job classification. TAC ¶¶ 70, 72. In February 2009, CCSF shifted the focus of Ellison's position to an area in which she had no experience or training. Id. ¶ 74. And, in March 2010, Ellison applied for an "0931 Manager III" position, but did not ultimately take the examination required for the position. Id. ¶ 80. That same month, a more senior employee "bumped" Ellison from her position, and CCSF terminated Ellison on April 3, 2010. Id. ¶ 81–82.

Ellison alleges that, in July 2014, she "was informed" that "her position in recruitment" was being reopened, but she "has not been provided the opportunity, as required by Civil Services rules[,] to be re-hired after layoff." Id. ¶ 84. These rules require that she "be given an opportunity to compete for either any subsequent 1246-level position, or in the alternative, a 1244-level position." Id. ¶ 85. Civil Service Rule ("CSR") 112.30.1(2), as Ellison cites it, states as follows:

> (2) The names of holdovers shall be ranked on a holdover roster <u>for the class or classes from which layoff occurs</u> and in the order of total seniority <u>in the class</u> in the City and County service. Seniority prior to resignation or termination shall not be used in determining holdover rights in a class.

Id. ¶ 86 (citing CSR 112.30.1(2)) (emphasis added). Ellison claims that the Department of Human Resources ("DHR") never contacted her for any available 1244-level positions, despite having a responsibility to do so under the "near-listing" Civil Service Rules. Id. ¶ 87.

In July 2011, Ellison was accepted for a 2992-level position, and was later promoted to a 0922 position which, she alleges, paid less than her previous 1246 position. Id. ¶ 88. However, the CCSF Compensation Manual, of which this Court takes judicial notice, shows she earns more than the 1244-level position at issue in her "near-listing" allegations. See id.

2

¶ 87; Defendant's Request for Judicial Notice in Support of Mtn. to Dismiss Plaintiffs' SAC ("RJNSAC") (dkt. 30) Ex. D.

### B. Plaintiff Mercedes Hernandez-Monroy

In January or February 2009, Hernandez-Monroy filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging that her subordinate at CCSF harassed her by "constantly mock[ing] and ridicul[ing] her job competency." TAC ¶ 100. Although she initially received strong performance reviews, this changed around Fall 2009. Id. ¶¶ 94–99. In 2010, she received a five-day suspension because of her poor work performance. Id. ¶¶ 105. She was forced to retire from her position in November 2010, at which time she entered into a Settlement Agreement ("Agreement") with CCSF. Id. ¶¶ 107–08. Under the Agreement, CCSF was to seal certain performance evaluations in Hernandez-Monroy's personnel file and give Hernandez-Monroy $50,000 in exchange for Hernandez-Monroy releasing CCSF from all liability related to her employment. Id.

In the years following her termination, Hernandez-Monroy alleges that she attempted—unsuccessfully—to obtain various positions as a "Prop. F" employee. TAC ¶¶ 112–18. "Prop. F" allows retired CCSF employees to work up to 950 hours per year in temporary positions on a part-time basis. Id. ¶ 110. Hernandez-Monroy contends that one CCSF employer would not hire her out of fear of retribution from DHR; others simply ignored her inquiries. Id. ¶¶ 112–17. Hernandez-Monroy further alleges that she was not informed of a change to the application process in 2014, requiring all candidates to apply to specific posted positions rather than apply broadly to different departments. Id. ¶ 111. She states that she applied to work at various departments in 2014, none of which responded or notified her of a change in the process. Id. ¶ 117. From this, Hernandez-Monroy deduces that "the confidential information contained [in the Agreement] has been leaked" because she was unable to obtain subsequent CCSF employment. Id. ¶ 118.

### C.     Claims for Relief

Ellison makes the following claims for relief.  The First Claim, for Race Discrimination (Disparate Treatment) under 42 U.S.C. § 2000, alleges that CCSF engaged in a pattern and practice of racial discrimination by not providing Ellison, an African American, the opportunity to be re-hired in violation of Civil Service Rules, while promoting Caucasian and Asian individuals to 1244-, 0931-, and 0932- level positions.  See TAC ¶¶ 120–35.  Ellison's Second Claim, for Race Discrimination (Disparate Impact) under 42 U.S.C. § 2000, alleges that the facially race-neutral policies described in the First Claim had the significant adverse effect of preventing Ellison (and other members of her protected class) from attaining promotions to 0931 and/or 0932-level positions; from attaining 1244-, 1246-, or 1250-level positions; and from receiving notification of available positions as required by the Civil Service Rules.  See id. ¶¶ 138–40.  The Third Claim, for Race Discrimination under 42 U.S.C. § 1981, alleges that CCSF subjected Ellison to disparate treatment by denying her the opportunity to be re-hired in contravention of Civil Service Rules while promoting Caucasians, Hispanics, and Asians to 1244-, 0931-, and 0932-level positions.  See id. ¶¶ 146–64.  The Eighth Claim, for Age Discrimination in violation of FEHA, Cal. Gov. Code § 12940, alleges that CCSF discriminated against Ellison, who is beyond 40 years of age, by not providing her the opportunity to be re-hired to "her former position," in violation of the Civil Service Rules, while hiring younger employees with less relevant experience.  See id. ¶¶ 208–13.  The Ninth Claim, for Age Discrimination under FEHA, is another disparate impact claim: Ellison alleges CCSF's facially age-neutral policy of "decentralization in human resources recruitment and testing . . . [prevented] Ms. Ellison and other members of her protected class from attaining promotions to 0931- and/or 0932-level positions."  See id. ¶¶ 218–25.

Hernandez-Monroy presses two claims for relief.  One is the Tenth Claim, for "Breach of Contract," alleging that the Settlement Agreement between CCSF and Hernandez-Monroy should be rescined because CCSF "repeatedly and materially breached the terms of the [Agreement]" by considering "sealed, confidential information" that made her an undesirable

1  candidate for re-hire.  See TAC ¶¶ 229–37.  She further complains of the lack of substantive

2  responses she received regarding her 'Prop. F' job vacancy inquiries.  Id. ¶ 236.  Her

3  Eleventh Claim, styled as "Declaratory Relief," requests a judicial determination of the

4  parties' rights and duties under the Agreement; specifically, she asks the Court to answer a

5  legal question in the abstract: "[W]hen a Settlement Agreement contains no 'no re-hire'

6  clause or 'no application' clause, can an employer utilize sealed confidential information

7  from the former employee's personnel file to prevent re-hire?"  See id. ¶¶ 238–42.  She

8  further requests a declaration that the Agreement is no longer valid.  Id. ¶ 242.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

A complaint that fails to state a claim upon which relief may be granted is subject to dismissal under FRCP 12(b)(6).  A dismissal under FRCP 12(b)(6) may be based on the "lack of a cognizable legal theory or [on] the absence of sufficient facts alleged under a cognizable legal theory."  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1988)); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  The Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

In the employment discrimination context, a plaintiff need not plead a prima facie case to survive a motion to dismiss pursuant to FRCP 12(b)(6).  See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 347 (2014) (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) ("imposing a 'heightened pleading standard in employment discrimination cases conflicts with [FRCP] 8(a)(2)'")); see also Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011).  However, a complaint must plead enough facts to state a claim for relief that is plausible on its face.  Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)); see also id. (quoting Starr, 652 F.3d at 1216) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement

to relief . . . ."). Courts must consider the complaint in its entirety, documents incorporated therein by reference, and matters of which a court may take judicial notice. Reese v. Malone, 747 F.3d 557, 568–69 (9th Cir. 2014) (citing Tellabs v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

### B.  Title VII

Title VII of the Civil Rights Act of 1964 provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove unlawful discrimination by producing "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]." Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007) (alteration in original) (quoting McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004)). If direct evidence of discrimination is not available, a plaintiff may rely upon a burden-shifting framework to prove discrimination, as set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802 (1973). To establish a prima facie case under McDonnell Douglas for failure to promote due to racial discrimination, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for an open job; (3) she was rejected for that job; and (4) rather than filling the position, the employer left it open or filled it with a worker outside the protected class at issue. McGinest, 360 F.3d 1103, 1122–23 (9th Cir. 2004).

The prima facie case under McDonnell Douglas, however, "is an evidentiary standard, not a pleading requirement." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1062 (9th Cir. 2004) (quoting Swierkiewicz, 534 U.S. at 510); see also United States v. Union Auto Sales, Inc., 490 F. App'x 847, 848 (9th Cir. 2012) (unpublished). A plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Edwards, 356 F.3d at 1061 (quoting FRCP 8(a)(2)). Moreover, Swierkiewicz governs not only complaints under Title VII, but also "any claim to which the McDonnell Douglas framework is applicable," including employment discrimination claims under 42

U.S.C. § 1981. Maduka v. Sunrise Hosp., 375 F.3d 909, 912 (9th Cir. 2004) (citing Swierkiewicz, 534 U.S. at 508, 513).

**III.   DISCUSSION**

In their TAC, Ellison and Hernandez-Monroy attempt to remedy the deficiencies the Court identified in their SAC—deficiencies that formed the basis for granting CCSF's Motion to Dismiss Plaintiff's SAC with leave to amend. Order at 1–2. Plaintiffs have not sufficiently amended their complaint to address these deficiencies, nor have they otherwise stated a plausible claim for relief.

Ellison's contentions, in short, are that CCSF discriminated against her in intent and/or effect by not providing her the opportunity to be rehired as the Civil Service Rules require. Hernandez-Monroy alleges that the Settlement Agreement should be rescinded because CCSF violated its terms regarding confidentiality. The Agreement, however, requires only that certain of Hernandez-Monroy's personnel reports remain under seal—not that her poor performance remain confidential. Hernandez-Monroy admits the Agreement contained no explicit restrictions regarding rehire, and does not contend that CCSF ever unsealed her personnel file; she nonetheless argues that the Agreement's terms led to "a reasonable expectation" that "confidential information" (presumably, Hernandez-Monroy's poor work performance) would not be discussed. TAC ¶¶ 118, 236. Her unsuccessful re-application attempts, she says, make it "apparent that the confidential information contained [in the Settlement Agreement] has been leaked." See id. ¶¶ 108–18.

But the Civil Service Rules and the Agreement, on their face, contradict both plaintiffs' alleged violations. The Court "need not accept as true . . . allegations that contradict facts that may be judicially noticed by the court." Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000) (citing Mullis v. United States Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987) and Branch v. Tunnell, 14 F.3d 449, 453–54 (9th Cir. 1994)). At a motion to dismiss, a court may consider unattached materials on which the complaint "necessarily relies" if "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." United

7

States v. Corinthian Colls., 655 F.3d 984, 999 (9th Cir. 2011) (citing Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006)).  Courts may also take judicial notice of "matters of public record" but not facts that may be subject to "reasonable dispute."  Id. (citing Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)); Fed. R. Evid. 201; see also Leghorn v. Wells Fargo Bank, 950 F. Supp 1093, 1106 (N.D. Cal. 2013) (taking judicial notice of a matter of public record because Plaintiffs, who opposed judicial notice, made no efforts to dispute the public record itself).

Applying these principles, the Court takes judicial notice of the Settlement Agreement, the Civil Service Commission Rules, the City's Annual Salary Ordinance, and the City's Compensation Manual.  Defendant's Request for Judicial Notice in Support of Motion to Dismiss Plaintiffs' TAC ("RJNTAC") (dkt. 46) Exs. A, B; RJNSAC Exs. C, D.  The Settlement Agreement and Civil Service Commission Rules are records on which Hernandez-Monroy relies—that is, she cites to them, they are central to her claim, and no party questions their authenticity.  See Corinthian Colls., 655 F.3d at 999.  The other abovementioned materials are public records whose facts and authenticity are not subject to reasonable dispute.  See id.; Fed. R. Evid. 201.  For the same reason, the Court takes judicial notice of the Notice of Final Action Taken By The Human Resources Director and the DHR's Classification Actions summary (together, "NFA").  RJNTAC Exs. C, D.

### A. Ellison

#### 1. Disparate Treatment Claims

In Claims One, Three, and Eight, Ellison alleges that she was subject to disparate treatment on account of her race and age.  The only basis for these claims is that CCSF allegedly discriminated against her by failing to follow its own rules in not providing Ellison the opportunity to be re-hired to her former position.  Specifically, Ellison alleges that in August or September 2014 she was informed that "her previous 1246-level position would be re-opened, possibly at the 09- level."  TAC ¶ 90 (emphasis added).  According to Ellison, the Civil Service Rules require that she "be given an opportunity to compete for either any subsequent 1246-level position, or in the alternative, a 1244-level position."  Id. ¶ 86.  But

8

CSR 112.30.1(2), as Ellison cites it, only provides re-hire procedures to positions "for the class or classes from which layoff occurs," meaning only Ellison's 1246-level position. See TAC ¶ 85 (citing CSR 112.30.1(2)) (emphasis added). Ellison did not allege that any 1246-level positions came available since 2010.[2]

Ellison next alleges that CCSF never contacted her for any available 1244- and 1250-level positions, despite being required to do so under the "near-listing" Civil Service Rules. See id. ¶¶ 87, 90. With respect to the 1244 positions, Ellison is incorrect for two reasons. First, Ellison never pled that she requested to be "near-listed" to a class 1244 position. Second, judicially noticeable CSR 109.11.2 does not require CCSF to contact her for a 1244 position because the salary range for 1244 positions is less than 7.5% of her 1246 position. CSR 109.11.2 ("[I]f the difference between the salary ranges of the former class and the new class is more than seven and one half [] percent . . . [incumbent] status shall not be granted unless approved by the Civil Service Commission."). See RJNTAC Ex. B (citing CSR 109.11.2).

Regarding the 1250 position, Ellison contends that CCSF violated CSR 109.10.6 by failing to notify her of the position. But CSR 109.10.6 is only triggered when classes are renumbered or retitled. TAC ¶ 90 (citing CSR 109.10.6) (emphasis added) ("When classes are renumbered or retitled . . . all employees with permanent status in the former class shall have continued permanent status in the renumbered or retitled class."). And, per the judicially noticeable NFA, the 1250 position was not "renumbered" or "retitled"; instead, it is a new classification that was "established" for the first time on November 21, 2014. See RJNTAC Exs. C, D. Because Ellison does not dispute the authenticity of these public records, nor the facts therein (for example, by alleging that CCSF fabricated the record, or manufactured the record to skirt the requirement that Ellison be notified of the 1250 position), they are not subject to "reasonable dispute," and thus are judicially noticeable. See Fed. R. Evid. 201; Corinthian Colls., 655 F.3d at 999.

---

[2] And she likely cannot so allege, given that the judicially noticeable Annual Salary Ordinance shows that no such positions have in fact opened. See RJNSAC, Ex. C.

9

Ellison's allegations that CCSF discriminated against her by violating the Civil Service Rules are dismissed because they lack facial plausibility. The Rules do not require the rehire and near-listing actions that Ellison alleges they do. "Establishing the plausibility of a complaint's allegations is . . . 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" Eclectic Properties East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 995–96 (9th Cir. 2014) (quoting Iqbal, 556 U.S. at 679). Because the Court need not accept as true allegations contradicted by judicially noticeable facts, Shwarz, 234 F.3d at 435, Ellison is left with no plausible CSR violation to support her claim. Ellison thus fails to state a claim for disparate treatment.

FRCP 15 states that "the court should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). "In the absence of any apparent or declared reason—such as . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Forman v. Davis, 371 U.S. 178, 230 (1962) (emphasis added); see also Sonoma Cty Ass'n of Retired Emps. v. Sonomy Cty., 708 F.3d 1109, 1117–18 (9th Cir. 2011).

Leave to amend may also be denied "if amendment of the complaint would be futile." Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir. 1988) (citing Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). "If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." Id. Ellison has failed to cure deficiencies identified in this Court's Order. As the instant motion pertains to the Third Amended Complaint, Ellison has had four attempts to state a viable claim for relief. Each time she has failed. Although Ellison now pleads that her 1246-level position was renumbered as a 1250 position, she does not dispute judicially noticeable records showing that the 1250 position was not "renumbered" at all, but was instead newly established. See RJNTAC Exs. C, D. Thus CCSF did not violate the Civil Service Rules in failing to notify her of this position. Given the alleged facts, further amendment of Ellison's

10

1  disparate treatment claims would be futile. For these reasons, the Court GRANTS
2  Defendant's Motion to Dismiss Ellison's disparate treatment claims WITH PREJUDICE.

### 2. Disparate Impact Claims

Ellison's disparate impact claims (Claims Two and Nine) allege that CCSF implemented policies that prevented African-Americans over the age of 40 from attaining promotions to class 0931-, 0932-, 1244-, 1246-, and 1250-level positions. TAC ¶¶ 138, 140, 220, 222. The problem, as the Court noted in its Order dismissing Ellison's SAC, is that Ellison never alleges that she applied for these positions within the applicable limitations period. Order at 1–2. Thus, on these facts, Ellison did not and cannot plead that any discriminatory policy with respect to those positions personally injured her. MTDTAC at 7–8; see Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 976 (9th Cir. 1994) ("To prevail on [a disparate impact] claim, [a plaintiff] must show that the defendants employed certain hiring criteria that had an adverse impact on him and members of his group."); Sanchez v. City of Santa Ana, 928 F. Supp. 1494, 1505–06 (C.D. Cal. 1995) (same).

Ellison's disparate impact claims further state that they are "directed towards, and specifically challenge[] the positions set forth in paragraphs 123 through 131 above," thus incorporating the disparate treatment claims regarding the 1246/1244/1250 re-hire. TAC ¶¶ 138, 220. The Court liberally construes this to mean that it should also look to the 1246/1244/1250 re-hire issue that formed the basis of the disparate treatment claim when reviewing Ellison's disparate impact claim.[3] If so, these claims must be dismissed for the same reason the disparate treatment claims merit dismissal.

A plaintiff, to be sure, need not plead a McDonnell Douglas prima facie case to survive a motion to dismiss; instead she must provide only "a short and plain statement of the claim showing that the pleader is entitled to relief" under FRCP 8(a)(2). Swierkiewicz, 534 U.S. at 508. Still, Ellison's claim cannot proceed without establishing that she applied for,

---

[3] Ellison's position is ambiguous because her allegations encompass two apparently unrelated factual scenarios—that she was not promoted to a higher-level 0931/0932 position (the apparent basis of her disparate impact claim) and, separately, that she was not given the opportunity to be rehired for her previous 1246-level position after being terminated (the basis of her disparate treatment claim). See TAC ¶¶ 90, 140, 222.

11

and was rejected from, the positions for which she alleges she and others in her protected class were treated disparately. For one thing, in order for an individual plaintiff to have constitutional standing to bring a Title VII [disparate impact] action, "he must show that he was personally injured by the defendant's alleged discrimination and that his injury will likely be redressed by the requested relief." Melendez v. Illinois Bell Telephone Co., 79 F.3d 661, 668 (7th Cir. 1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). According to the TAC, Ellison did not apply for any position—whether 1244, 1246, 1250, 0931, or 0932—in the relevant time frame. Thus, she cannot "show that [s]he was personally injured by the defendant's alleged discrimination and that [her] injury will likely be redressed by the requested relief." Melendez, 79 F.3d at 668 (citing Lujan, 504 U.S. at 560–61).

Whether for a failure to establish standing or because it is not plausible that Ellison suffered the discriminatory impact of a hiring policy for a position to which she did not apply, the Court dismisses Ellison's disparate impact claims. In Ellison's opposition to the instant motion, and at the motion hearing, she argued that "the thrust of [her] disparate impact claims is that the reclassifications of the positions itself is [sic] the race-neutral practice subject to disparate impact discrimination based on race and/or age." Plaintiffs' Opp'n to Defendant's Mot. to Dismiss TAC ("Plaintiffs' Opp'n") at 5–6 (emphasis added). For this apparently novel argument, Ellison cites the allegation in the TAC regarding the implementation of "a facially age-neutral policy of decentralization in human resources recruitment and testing that had a significant adverse effect preventing Ellison [. . .] from attaining promotions to 0931- and/or 0932-level positions." Id. (alteration in original) (citing TAC ¶ 222). Ellison also cites to the portion of the TAC alleging that CCSF "circumvent[ed] the merit promotion process by using such devices as: [] canceling positions when white and non-Hispanic or non-African American applicants do not receive a sufficiently high merit promotion ranking to qualify for the position . . . ." Id. (citing TAC ¶¶ 19(b), 19(e), 140).

The Court liberally construes Ellison's post-TAC arguments as articulating the following legal theory: CCSF reclassified Ellison's 1246 position in an attempt to skirt CSR

12

109.10.6, which otherwise would have made Ellison eligible for re-hire under the 1250 classification, and would have required CCSF to notify her of the position's availability. See RJNTAC Ex. B ("Eligibles on a list in the former class shall continue as eligibles on the renumbered class."); see also Plaintiffs' Opp'n at 6. But a fair reading of the TAC shows that its allegations fail to articulate that position. For one thing, the phrase "decentralization in human resources recruitment" hardly puts the Court on notice that the basis for her disparate impact claims is the "reclassifications of the positions itself," as Ellison now contends. TAC ¶ 222; Plaintiffs' Opp'n at 5–6. Moreover, the cited passages in the TAC once again pertain to the 0931 and 0932-level positions—positions for which Ellison never alleges to have applied. See TAC ¶ 80 (admitting that she never completed the application process for an 0931-level position); id. ¶ 90 (noting that she "checked Defendant's website very frequently and set up automatic e-mail notifications for any 1246-, 0931-, and 0932-level positions; she never received any such notifications"); id. ¶ 140 (emphasis added) ("CCSF implemented facially race-neutral policies in human resources recruitment and testing and classification elimination that . . . prevent[ed] Ms. Ellison . . . from attaining promotions to 0931- and/or 0932-level positions . . . .").

In unusual circumstances, failure to apply for a position may not vitiate a Title VII action. To be sure, the Supreme Court has held that a Title VII plaintiff need not apply for a position if application would have been futile. Gutowsky v. Cnty. of Placer, 108 F.3d 256, 260 (9th Cir. 1997) (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365–68, (1977)). "In such an instance, the plaintiff must show that he or she 'was a potential victim of unlawful discrimination' and, to that end, the plaintiff must establish that he or she 'would have applied for the job had it not been for those [discriminatory] practices.'" Id. (quoting Int'l Bhd. of Teamsters, 431 U.S. at 365–68). This is a high burden.[4] See Int'l Bhd. Of

---

[4] This standard, moreover, is likely confined to instances where the applicant was discouraged from applying for the target position, unlike here where the applicant was allegedly unaware of the position's existence. Breiner v. Nevada Dep't of Corr., 610 F.3d 1202, 1206 (9th Cir. 2010) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1374 (9th Cir.1987)) ("To prevail on the merits as nonapplicants, the plaintiffs must show that they were 'discouraged from applying' rather than that they 'simply failed to do so.'").

13

Teamsters, 431 U.S. at 367–68; Peacock v. Cnty. of Los Angeles, 133 F.3d 928, at *1 (9th Cir. 1997) (unpublished) ("Defendants' unreturned telephone call does not establish a policy or practice of systematic discrimination such that completing the job application process would be a futile gesture."). Here, Ellison never alleges that she would have applied for the 1250 position but for CCSF's supposed discriminatory reclassification; instead, the only positions she contends CCSF's "facially race-neutral policies in human resources recruitment and testing and classification elimination" deprived her of were 0931 and 0932 positions—positions she does not allege were reclassified. TAC ¶¶ 140, 222.

Ellison's failure to allege that she applied for any of the jobs at issue (1244, 1246, 1250, 0931, or 0932) precludes her from having stated a sufficient injury, as a plausible legal theory requires.[5] See Tagupa v. Bd. of Dirs., 633 F.2d 1309, 1311–12 (9th Cir. 1980) (holding that, in an employment discrimination suit under federal statute, the requirement that plaintiff applied for the position is a substantive element of her cause of action); see also Yartzoff v. Thomas, 809 F.2d 1371, 1374 (9th Cir. 1987) (finding that plaintiff failed to state a claim where he "admit[ted] that he failed to complete applications and otherwise comply with proper hiring and reclassification procedures"). Ellison has had ample opportunity to articulate a viable legal theory; yet, in her four attempts to date, she has failed to do so.[6] See

---

[5] Before Twombly and Iqbal, the Ninth Circuit held that Title VII plaintiffs need not allege facts supporting a McDonnell Douglas prima facie case of disparate impact to survive a motion to dismiss. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). In so holding, Gilligan cited two principal reasons: the impracticality of having a one-size-fits-all pleading standard for every discrimination claim, and the plaintiff may need discovery in order to plead all necessary elements of a prima facia case. Id. at 250. Since Twombly and Iqbal, which required that legal claims be facially plausible, several district courts—including this one—have treated Gilligan as implicitly overruled. See Mora v. US Bank, No. CV–15–02436–DDP (AJWx), 2015 WL 4537218, at *7 n.3 (C.D. Cal. July 27, 2015); Sparks v. S. Kitsap Sch. Dist., No. 3:13–CV–05682–RBL, 2014 WL 1047217, at *3 (W.D. Wash. Mar. 18, 2014); Jeffrey v. Foster Wheeler LLC, No. 14–CV–05585–WHO, 2015 WL 1004687, at *1 (N.D. Cal. Mar. 2, 2015); see also Taylor v. Accredited Home Lenders, Inc., 580 F. Supp. 2d 1062, 1068 (S.D. Cal. 2008) (interpreting Gilligan to mean that the plaintiff need not prove a prima facie case, but must still plead the general disparate impact elements). The Court agrees with our sister courts' treatment of Gilligan especially where, as here, Gilligan's reasoning is inapt: Ellison's failure to allege that she applied for the jobs at issue does not stem from a lack of discovery.

[6] At the hearing for the instant motion, Ellison cited PAE Gov't Servs., Inc. v. MPRI, Inc. for the proposition that plaintiffs are permitted to plead in the alternative. 514 F.3d 856, 859 (9th Cir. 2007). But MPRI is inapt here, where Ellison's failure is not a matter of her stating inconsistent allegations, which is permissible, but instead concerns her inability to state a plausible legal theory.

14

Albrecht, 845 F.2d at 195 (quoting Schreiber Distributing, 806 F.2d at 1401) ("If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper."). The Court thus GRANTS CCSF's Motion to Dismiss Ellison's disparate impact claims WITH PREJUDICE.

### B. Hernandez-Monroy

Hernandez-Monroy presses two causes of action in the TAC: "Breach of Contract" (Tenth Claim) and "Declaratory Relief," (Eleventh Claim). As to her claim for breach, she alleges that CCSF reneged on its promise that Ellison "would be considered without reference to the sealed, confidential information" in the Agreement. TAC ¶ 236. Her claim for "Declaratory Relief"—which, contrary to the Court's Order, is still styled as a remedy—asks the Court to clarify her rights under the Agreement.[7]  Id. ¶ 242.

#### 1. Declaratory Relief

As an initial matter, the Court dismisses Ellison's claim for "Declaratory Relief" because it suffers from the same problem as its predecessor in the SAC: it is not a valid cause of action. See, e.g., Kimball v. Flagstar Bank F.S.B., 881 F. Supp. 2d 1209, 1219 (S.D. Cal. 2012) ("Declaratory relief is not an independent cause of action, but instead a form of equitable relief."). Hernandez-Monroy cannot resuscitate this claim, given that the only relevant facts alleged therein pertain to—or simply repeat—the facts alleged in the "Breach of Contract" claim. Moreover, because she failed to heed the Court's admonitions regarding a properly styled cause of action, Order at 2, the Court DISMISSES this claim WITH PREJUDICE. See Sonoma Cty Ass'n of Retired Emps., 708 F.3d at 1118 (noting that repeated failure to cure deficiencies is grounds for dismissal with prejudice).

#### 2. Breach of Contract

Hernandez-Monroy's "Breach of Contract" claim suffers the same fatal flaw as its

---

[7] In its Order dismissing the SAC, the Court found that her SAC claims for "Rescission" and "Declaratory Relief" (Claims Ten and Eleven, detailed below) "fail[ed] to state a claim because they [were] styled as remedies, not causes of action." Order at 2. The Court also faulted Hernandez-Monroy for "fail[ing] to plead that CCSF breached any actual term of the Settlement Agreement, specifically by unsealing the envelope containing certain records in her personnel file." Id.

15

predecessor in the SAC: the Agreement does not contain any restrictions on her re-hire. As Ellison admits, it "contained no 'no re-hire' provision nor any 'no application' provision." TAC ¶ 236. Thus, on the face of the Agreement, nothing prevents CCSF from expressly refusing to re-hire Hernandez-Monroy, giving her a negative recommendation, or discussing her poor work performance. Instead, the only relevant clause of the Agreement states than an enumerated list of documents ("Written Reprimand" of certain dates, "Performance Improvement Plan" of certain dates, "Report to Timekeeper showing error" of certain dates," "Notice of Suspension," etc.) "will be placed in a sealed envelope in [Hernandez-Monroy's] personnel file with a memorandum attached to the envelope stating that the envelope is not to be opened except pursuant to court order, federal, state or local law." See id. ¶ 108; RJNTAC, Ex. A ¶¶ 4–5.

Despite the Court's admonitions in its Order, Hernandez-Monroy once again does not plead a plausible theory for breach of contract, such as by alleging that CCSF unsealed the envelope. Rather, she says that the Agreement "[led] to a reasonable expectation of the parties that Plaintiff would be considered without reference to the sealed, confidential information that made her 'untouchable' [as a candidate for employment]." Id. ¶ 236. The crux of the TAC appears to be that Hernandez-Monroy's inability to be re-hired as a "Prop. F" employee makes it "apparent that the confidential information contained [in the Agreement] has been leaked." Id. ¶ 118. What Hernandez-Monroy means by "[leaked] confidential information," the Court surmises, is that members of CCSF must have spoken ill of Hernandez-Monroy or otherwise shared unflattering accounts of her past performance—accounts that, presumably, are also embodied in the sealed materials. But the Agreement never proscribed such communications; moreover, Hernandez-Monroy's contentions are a far cry from alleging that CCSF unsealed the documents.

Hernandez-Monroy is required to plead a plausible breach, which she has not done. To state a plausible claim for breach of contract, a plaintiff must allege that the defendant in fact breached the contract, which in this context means unsealing the documents—not speaking ill of Hernandez-Monroy's work performance, or recommending that she not be

hired. Because Hernandez-Monroy did not—and almost certainly cannot, in light of the underlying facts—state a viable breach of contract claim, she will not be permitted a fifth attempt to do so. The Court, in its discretion, hereby GRANTS CCSF's Motion to Dismiss Hernandez-Monroy's claims WITH PREJUDICE.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss the TAC WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: September __, 2015

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE